# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE

| | |
|---|---|
| HARPETH RIVER WATERSHED ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 3:14-cv-01772 ) |
| CARTWRIGHT CREEK, LLC, | ) ) ) |
| Defendant. | ) ) |

## CONSENT DECREE

WHEREAS, the parties to this Consent Decree are Plaintiff Harpeth River Watershed Association ("Plaintiff") and Defendant Cartwright Creek, LLC ("Defendant") (collectively, the "Parties");

WHEREAS, Plaintiff is a non-profit corporation based in Williamson County, Tennessee, with members who live and work near the Harpeth River;

WHEREAS, Defendant is a Tennessee manager-managed limited liability company that owns and operates a sewage treatment plant and sewer system in Williamson County, Tennessee; Defendant's principal office is located in Glen Ellyn, Illinois;

WHEREAS, Plaintiff filed a Complaint in this action on August 28, 2014 pursuant to Section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, alleging certain violations of the National Pollution Discharge Elimination System ("NPDES") permit issued to Defendant pursuant to § 402 of the CWA, 33 U.S.C. § 1342;

- 1 -

WHEREAS, in April 2014, the Tennessee Department of Environment and Conservation ("TDEC") issued a Commissioner's Order against Defendant to address violations of the Tennessee Water Quality Control Act, Tenn. Code Ann. § 69-3-101 *et seq.*;

WHEREAS, recognizing that it is in the best interest of the Parties to resolve their disputes and protect the Harpeth River, Defendant wishes to compromise and resolve all claims between them without admission of liability or further proceedings;

WHEREAS, the Parties recognize, and the Court, by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is an adequate and equitable resolution of the claims in Plaintiff's Complaint; and

WHEREAS, a copy of the proposed Consent Decree was received by the Attorney General of the United States and the Administrator of the United States Environmental Protection Agency ("EPA") before entry of this Consent Decree as required by 33 U.S.C. § 1365(c)(3).

NOW THEREFORE, before the taking of testimony, without trial or determination of any issue of fact or law, without any admission by Defendant of the violations alleged in the Complaint, and in consideration of the mutual promises and covenants contained herein, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.  For purposes of the entry of this Consent Decree, the Parties agree that the Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 or 33 U.S.C. § 1365(a). For purposes of the entry of this Consent Decree, the Parties agree that venue lies in this

District pursuant to Section 505(c)(1) of the CWA, because it is the judicial district in which the alleged violations occurred.

## II. APPLICABILITY

2.  The provisions of this Consent Decree shall apply to, be binding upon, and inure to the benefit of the Parties and their respective successors and/or assigns.

3.  In the event of a transfer of a portion of the ownership or operation of Defendant's sewage treatment plant or sewer system (collectively "Sewer System"), whether in compliance with the procedures of this Paragraph or otherwise, Defendant shall remain obligated to ensure that the terms of this Consent Decree are implemented with respect to the portion of the ownership or operation of the Sewer System retained by Defendant. Defendant agrees to copy Plaintiff on any notices to TDEC required under its NPDES permit with respect to a change of ownership. Defendant shall require, as a condition of any sale or transfer, that the purchaser or transferee agrees in writing to be bound by this Consent Decree and submit to the jurisdiction of the Court for its enforcement. Any attempt to transfer ownership or operation of the Sewer System without complying with this Paragraph constitutes a violation of this Consent Decree.

4.  Within fourteen (14) Days after the Effective Date of the Consent Decree, Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any substantive provision of this Consent Decree, as well as to any contractor retained to perform Work required under this Consent Decree.

5.  In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure of any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

6.      Defendant agrees not to challenge the terms of this Consent Decree in any bankruptcy proceeding.

## III. DEFINITIONS

7.      Terms used in this Consent Decree that are defined in the Clean Water Act or in regulations promulgated pursuant to the Clean Water Act shall have the meanings assigned to them in the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* and regulations promulgated under the Clean Water Act, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "Certification" or "Certify" when used in this Consent Decree shall require Defendant to comply with Paragraph 8 of this Consent Decree.

b.      "Date of Entry" shall mean the date on which this Consent Decree is entered by the United States District Court for the Middle District of Tennessee.

c.      "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

d.      "Deliverable" shall mean any written document required to be prepared and/or submitted by or on behalf of Defendant pursuant to this Consent Decree. Specifically, for purposes of this Consent Decree, "deliverable" shall include (1) the Nutrient Management Plan presented to the Tennessee Department of Environment and Conservation and related annual updates, (2) documentation of the annual grant of funds for the Supplemental Environmental Projects, and (3) reports about the status of the Supplemental Environmental Projects, as required pursuant to Section VII of this Consent Decree.

- 4 -

Case 3:14-cv-01772   Document 17   Filed 11/04/14   Page 4 of 19 PageID #: 270

e. "Month" shall mean ~~shall mean~~ TSC one calendar month running from the numbered Day to the same numbered Day of the following calendar month, regardless of whether the particular month has 28, 29, 30 or 31 days. In the case where a triggered event would occur on a day of the month which does not exist (for example, on February 30), then the event shall be due on the first (1st) day of the following month (for example, March 1).

f. "NPDES" shall mean the National Pollutant Discharge Elimination System authorized under Section 402 of the CWA, 33 U.S.C. § 1342.

g. "NPDES Permit" shall mean NPDES permit No. TN0027278 issued to Defendant pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342, for the Cartwright Creek WWTP, and any future extended, modified, or reissued permits.

h. "Timely" when applied to the submittal of a Deliverable shall mean submitted no later than the deadline established in this Consent Decree (or in a document approved pursuant to this Consent Decree) and containing all of the elements pertaining to the submittal as set forth in this Consent Decree (or in a document approved pursuant to this Consent Decree). "Timely," when applied to the implementation of any Work shall mean implemented no later than the deadline established in this Consent Decree (or in a document approved pursuant to this Consent Decree) and in accordance with the elements pertaining to such Work as set forth in this Consent Decree (or in a document approved pursuant to this Consent Decree).

i. "Wastewater Collection and Transmission System" or "WCTS" shall mean the wastewater collection, retention, and transmission systems, including all pipes, Force Mains, Gravity Sewer Lines, lift stations, Pump Stations, manholes and appurtenances thereto, owned or operated by Defendant that are designed to collect and convey municipal sewage (domestic, commercial and industrial) to Defendant's sewage treatment plant.

j. "Work" shall mean all activities Defendant is required to perform under this Consent Decree.

## IV. COMPLIANCE REQUIREMENTS

8. Certification. In all Deliverables, notices, documents, or reports required to be submitted to Plaintiff, the State of Tennessee, the United States, and this Court pursuant to this Consent Decree, Defendant shall, pursuant to 40 C.F.R. § 122.22, sign and Certify such notices, documents, and reports as follows:

> *I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering such information, the information submitted is, to the best of my knowledge and belief, true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.*

## V. CIVIL PENALTIES

9. The Parties agree that the cost of the Supplemental Environmental Projects described below shall take the place of any civil penalties that might have been awarded for any violations of the CWA that might have been found had this matter progressed to trial.

## VI. INJUNCTIVE RELIEF

10. Permit Compliance. This Consent Decree is not and shall not be interpreted to modify any existing permit issued pursuant to any federal, state, or local laws or regulations.

11. <u>Nutrient Management Plan</u>. Defendant agrees to diligently pursue the development and implementation of a Nutrient Management Plan to the satisfaction of the Tennessee Department of Environment and Control ("TDEC"), in accordance with the terms of Section 3.5 and Attachment 1 of its currently effective NPDES Permit.

a. Defendant shall demonstrate diligence by presenting TDEC with a Nutrient Management Plan within one hundred twenty (120) Days of the entry of this Consent Decree. Defendant shall diligently pursue written confirmation of TDEC's acceptance or rejection of the proposed Nutrient Management Plan. Defendant shall submit a report to TDEC about the status of implementation of the Nutrient Management Plan one hundred eighty (180) Days after receiving TDEC's written approval of the Nutrient Management Plan. In accordance with the anticipated terms of the NPDES Permit, Defendant shall, twelve Months after issuance of the NPDES Permit, update the Nutrient Management Plan and submit a report of such updates to TDEC on February 15 of each subsequent year thereafter.

b. The Parties acknowledge that on April 23, 2013, TDEC published a draft renewed NPDES Permit for Defendant's facility, which the parties expect to be issued in final form after the U.S. Environmental Protection Agency has completed its review. Defendant further agrees to comply with the Nutrient Management Plan provisions contained in the forthcoming reissued NPDES Permit No. TN0027278, provided that Defendant reserves the right to appeal the provisions of the Permit related to Nutrient Management Plans only in the event such terms are materially different than the terms of the Draft Permit. If Defendant asserts that the NPDES permit's Nutrient Management Plan terms are "materially different" than the draft permit, Defendant shall notify Plaintiff, and the Parties shall follow the dispute resolution procedures outlined in Section VII.

- 7 -

12. <u>Stakeholder Group</u>. Defendant agrees to participate in a group of stakeholders who have an interest in the use and health of the Harpeth River ("Stakeholder Group") to create a watershed restoration plan and design river studies necessary to further environmental restoration and protection within the Harpeth River Watershed. Groups with an interest in the health and/or study of the Harpeth River shall include non-governmental organizations, governmental agencies, regulated parties, and technical experts from academic institutions or the private sector.

    a. Defendant agrees that one or more representatives of Defendant shall participate in good faith in the activities of the Stakeholder Group and agrees to take no action that would unreasonably delay the Stakeholder Group's progress or completion of the Stakeholder Group's mission and projects.

    b. Defendant acknowledges the need for more comprehensive instream data collection and the translation into viable Harpeth River upgrades.

## VII. SUPPLEMENTAL ENVIRONMENTAL PROJECTS

13. <u>Continuous In-Stream Monitoring and Water Quality Investigations</u>. Defendant shall pay Forty Thousand Dollars ($40,000) for Supplemental Environmental Projects ("SEP") to promote water quality monitoring and studies of the Harpeth River. Payments shall be made according to the schedule set forth in subparagraph (d) below.

    a. As set forth more specifically in subparagraph (d) below, Defendant shall make three annual grants of Eleven Thousand Dollars ($11,000) to the Tennessee Wildlife Resources Foundation ("TWRF"), a non-profit organization, to fund continuous water quality monitoring gages for a period of three (3) years. TWRF will direct the funds to the Tennessee Wildlife Resources Agency ("TWRA") to act as a cooperator with the United States Geological Survey ("USGS") to place and operate water quality gages on the Harpeth River.

b. Defendant acknowledges that TWRA, in coordination with USGS, will use its expertise to select parameters for study and to site gages at locations to support watershed-level receiving stream investigations and comprehensive data collections. This may include placing gages at either new or existing sites, or both. This may include adding the capacity to study new parameters, such as nutrients, at existing water quality gages. It is agreed that the first monitoring period funded by Defendant's first annual payment may be less than one full year so as to focus on low-flow summer conditions. During this first monitoring period, the monitoring gages may be relocated several times to different sites on the Harpeth River in order to determine the best locations for placement in order to obtain the most relevant data. It is anticipated that monitoring gages will not be relocated during subsequent years.

c. Defendant acknowledges that at the beginning of the fourth year (thirty-six (36) Months after entry of the consent decree), the balance of Defendant's $40,000 SEP funds that have not already been used to fund water quality gages during the first three years will be used by TWRA, acting upon the advice and counsel of the Stakeholder Group, *see* Subsection 6, to fund water quality monitoring, studies or improvement projects in the Harpeth River watershed.

d. SEP Payments:

(1) First SEP Payment: Eleven Thousand Dollars ($11,000) to be paid to TWRF on or before the later of (A) the seventh (7th) Day after the Date of Entry of this Consent Decree or (B) forty-five (45) days after the date this Consent Decree is filed with the Court;

(2) Second SEP Payment: Eleven Thousand Dollars ($11,000) to be paid to TWRF twelve (12) Months after the Date of Entry of this Consent Decree;

(3) <u>Third SEP Payment</u>: Eleven Thousand Dollars ($11,000) to be paid to TWRF twenty-four (24) Months after the Date of Entry of this Consent Decree;

(4) <u>Fourth SEP Payment</u>: Seven Thousand Dollars ($7,000) to be paid to TWRF thirty-six (36) Months after the Date of Entry of this Consent Decree, and to be used in accordance with subparagraph (c) above.

e. Defendant will coordinate with TWRA to submit an annual SEP status report and a final SEP Completion Report at the conclusion of the four year SEP period pursuant to Paragraph 14 below.

14. <u>SEP Completion Report</u>. Within thirty (30) Days after the date set for completion of the SEP, Defendant shall submit a SEP completion report to the Court and the entities identified in Section XII. The SEP Completion Report shall contain all of the following information:

a. A detailed description of the SEP as implemented, based on information provided by TWRA.

b. An itemized list of TWRA's costs and Defendant's payments pursuant to the SEP.

c. Certification that the SEP has been fully implemented pursuant to the provisions of this Consent Decree. For purposes of this Consent Decree, "fully implemented" shall mean the payment of $40,000 toward water quality monitoring and Harpeth River studies as described above.

d. After receiving the SEP Completion Report, Plaintiff shall notify Defendant whether or not Defendant has satisfactorily completed the SEP.

- 10 -

e. Any public statement, oral or written, in print, film, or other media, made by Defendant making reference to the SEP under this Consent Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, *Harpeth River Watershed Association v. Cartwright Creek*, taken on behalf of citizens under the Clean Water Act."

## VIII. EFFECTIVE DATE

15. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

## IX. RETENTION AND PRODUCTION OF RECORDS

16. Defendant shall provide to Plaintiff concurrent copies of all required reports and correspondence with the Tennessee Department of Environment and Conservation ("TDEC") and EPA concerning compliance with their NPDES permits for a period of two years from entry of this consent decree.

17. Until one (1) year after the termination of this Consent Decree pursuant to Section XIV, Defendant shall retain, and shall instruct their contractors, consultants, and other agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or other agents' possession or control, or that come into their contractors' or other agents' possession or control, and that relate in any manner to Defendant's satisfaction of its obligations under this Consent Decree.

18. This Consent Decree does not affect any other rights to obtain information, held by Plaintiff pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect

- 11 -

Case 3:14-cv-01772   Document 17   Filed 11/04/14   Page 11 of 19 PageID #: 277

any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## X. DISPUTE RESOLUTION

19. Unless otherwise expressly provided for in this Consent Decree, the Parties shall attempt to resolve any and all disputes arising under or with respect to this Consent Decree through the dispute resolution procedures of this Section ("Dispute Resolution").

20. A dispute shall be considered to have arisen when one party gives Notice of a Dispute to the opposing party pursuant to the requirements of Section XV hereof. Such Notice of Dispute shall state clearly the matter in dispute.

21. If after thirty (30) Days after submission of the Notice of Dispute, the complainant concludes that the Parties were unable to resolve the dispute, then the complainant may seek resolution of the dispute by the Court. The Parties may continue to attempt to resolve the Notice of Dispute while the matter is pending before the Court.

22. The invocation of Dispute Resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree.

## XI. FORCE MAJEURE

23. "*Force majeure*," for purposes of this consent decree, is defined as any event arising from causes beyond the control of Defendant, or any person controlled by defendant, or of Defendant's contractors or consultants, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.

24. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a *force majeure* event,

Defendant shall provide notice to Plaintiff, within a reasonable time after Defendant first knew or should have known that the event might cause a delay. Defendant shall also provide an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a *force majeure* event if it intends to assert such a defense; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any written notice required by this Section all available documentation.

25. If Plaintiff agrees that the delay or anticipated delay is attributable to a *force majeure* event, the time for performance of the obligations under this Consent Decree that are affected by the *force majeure* event may be extended for such time as is necessary to complete those obligations.

26. If Plaintiff does not agree that the delay or anticipated delay has been or will be caused by a *force majeure* event, or does not agree to the extension of time sought by Defendant, then Defendant may invoke Dispute Resolution under Section X of this Consent Decree.

27. If Defendant invokes Dispute Resolution under Section X of this Consent Decree, Defendant shall have the burden of demonstrating that the delay or anticipated delay has been or will be caused by a *force majeure* event; the number of Days of delay or anticipated delay that was or will be caused by such *force majeure* event; that the duration of the delay or the extension sought was or will be warranted under the circumstances; that Defendant could not have foreseen and prevented such delay; that Defendant exercised best efforts to prevent, avoid,

- 13 -

Case 3:14-cv-01772   Document 17   Filed 11/04/14   Page 13 of 19 PageID #: 279

minimize, and mitigate the delay and its effects; and that Defendant complied with the requirements of this Section.

## XII. MODIFICATION

28. The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties, or by order of the Court. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only upon approval by the Court.

## XIII. TERMINATION

29. This Consent Decree shall be effective for a term of four (4) years after the Effective Date.

30. If prior to the fourth (4th) anniversary of the Effective Date, Defendant has completed the requirements of Sections VI and VII of this Consent Decree, Defendant may submit to Plaintiff a Request for Termination, stating that Defendant has satisfied those requirements, together with supporting documentation.

31. Following Plaintiff's receipt of Defendant's Request for Termination, the Parties may confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If Plaintiff agrees that the Consent Decree may be terminated, Plaintiff and Defendant shall jointly execute and file with the Court for the Court's approval a Notice of Termination of Consent Decree stipulating termination of the Consent Decree.

32. Plaintiff shall have up to ninety (90) Days to evaluate Defendant's request for termination, but Plaintiff shall not unreasonably withhold its agreement that the Consent Decree

qualifies for termination. However, if Plaintiff determines that the Consent Decree may not be terminated, Defendant may invoke Dispute Resolution under Section X of this Consent Decree.

33. Termination of this Consent Decree does not discharge Defendant of its obligations set forth in Section IX (Retention of Records) of this Consent Decree.

## XIV. FINAL JUDGMENT AND RELEASE OF CLAIMS

34. Upon entry, this Consent Decree shall become effective and shall constitute a final judgment of the Court as to the Parties. The Consent Decree shall be deemed to settle all claims asserted by Plaintiff in this case against Defendant. Accordingly, Plaintiff releases and discharges Defendant from any and all claims and causes of action raised in the Complaint in this action and/or the 60-day notice to Defendant related thereto. This release does not waive or release any claims, demands, or liabilities arising under or in connection with the Consent Decree, nor does it waive or release any claims, demands, or liabilities based on future events.

## XV. NOTICES

35. Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent by U.S. Certified Mail, Return Receipt Requested, or nationally recognized overnight delivery service (such as Federal Express or UPS), with all delivery charges paid by the sender and addressed as follows:

> To the United States:
>
> Chief, Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> Box 7611 Ben Franklin Station
> Washington, D.C. 20044-7611
>
> Chief, Clean Water Enforcement Branch

Water Protection Division
U.S Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303

To Environmental Protection Agency:

Chief, Clean Water Enforcement Branch
Water Protection Division
U.S Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303

To the State of Tennessee:

Office of the Attorney General
Environmental Division
P.O. Box 20207
Nashville, Tennessee 37202

Director, Water Pollution Control
Tennessee Department of Environment and Conservation
312 Rosa L. Parks Ave - Tennessee Tower - 2nd Floor
Nashville, TN 37243
(615) 532-0109

To the Tennessee Department of Environment and Conservation:

Director, Water Pollution Control
Tennessee Department of Environment and Conservation
312 Rosa L. Parks Ave - Tennessee Tower - 2nd Floor
Nashville, TN 37243
(615) 532-0109

To the Tennessee Wildlife Resources Foundation:

Executive Director
Tennessee Wildlife Resources Foundation
5000 Linbar Drive, Suite 275
Nashville, TN 37211
615.831.9311 office
615.831.9081 fax

To the Tennessee Wildlife Resources Agency:

Instream Flow and Project WILD Coordinator
Tennessee Wildlife Resources Agency

P.O. Box 40747
Nashville, Tennessee 37220
(615) 781-6643

To Defendant:

Thomas L. Kolschowsky
800 Roosevelt Road, Suite A120 Building A
Glen Ellyn, Illinois 60137-5846

Henry M. Walker
Bradley Arant Boult Cummings LLP
Roundabout Plaza
1600 Division Street, Suite 700
Nashville, TN 37203
P: 615.252.2363
F: 615.252.6363
hwalker@babc.com

To the Plaintiff:

Executive Director
Harpeth River Watershed Association
P.O. Box 1127
Franklin, TN 37065

Delta Anne Davis
Southern Environmental Law Center
2 Victory Avenue, Suite 500
Nashville, TN 37213
P: (615) 921-9470
F: (615) 921-8011
adavis@selctn.org

36. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provide above.

37. Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVI. SIGNATORIES/SERVICE

38. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XVII. GENERAL PROVISIONS

39. The Plaintiff's claims in this action are disputed by Defendant, and this Consent Decree represents the compromise of such disputed claims. This Consent Decree and compliance with this Consent Decree shall not constitute, or be construed as, and are not intended to be, an admission concerning the validity of any such claim, or an acknowledgement by Defendant of any wrongdoing or liability, all such wrongdoing and liability being expressly denied.

40. Based upon the entire record herein, the Court hereby finds that this Consent Decree is fair, reasonable, and in the public interest.

ENTER this 4 day of Nov., 2014.

*Todd J. Campbell*
UNITED STATES DISTRICT JUDGE

APPROVED FOR ENTRY:

_(signature)_

DELTA ANNE DAVIS
BPR No. 010211
SOUTHERN ENVIRONMENTAL LAW CENTER
2 Victory Avenue
Suite 500
Nashville, TN 37213
P: (615) 921-9470
F: (615) 921-8011
adavis@selctn.org

*Attorneys for Plaintiff*

_(signature)_

HENRY M. WALKER
BPR No. 000272
BRADLEY ARANT BOULT CUMMINGS LLP
Roundabout Plaza
1600 Division Street, Suite 700
Nashville, TN 37203
P: 615.252.2363
F: 615.252.6363
hwalker@babc.com

*Attorneys for Defendant*